Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| L. Michael Szendrey y su esposa Maricarmen Ramos de Szendrey y la Sociedad de Bienes Gananciales que existe entre ellos<br><br>    Peticionarios<br><br>        v.<br><br>Consejo de Titulares del Condominio Metropolitan Professional Park<br><br>    Recurridos<br><br>F. Castillo Properties, Inc.; Gam Realty S.C.S.E. y M.P.P. Realty, Inc.<br><br> Interventores-recurridos | Certiorari<br><br>2011 TSPR 206<br><br> 184 DPR ____ |

Número del Caso:   CC-2011-208

Fecha: 29 de diciembre de 2011

 Tribunal de Apelaciones:

        Región Judicial de San Juan, Panel Especial XI

Juez Ponente:    Hon. Luis G. Saavedra Serrano

Abogados de la Parte Peticionaria:

        Lcdo. Ernesto González Piñero
        Lcda. Maricarmen Ramos de Szendrey
        Lcdo. Juan J. Hernández López de Victoria

Abogados de la Parte Recurrida:

        Lcdo. Enrique Nassar Rizek
        Lcdo. Kenneth Colón
        Lcdo. José G. Barea Fernández

Materia: Impugnación de Acuerdo Perjudicial, Injuction Preliminar y Permanente, Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| L. Michael Szendrey y su esposa Maricarmen Ramos de Szendrey y la Sociedad de Bienes Gananciales que existe entre ellos<br><br>Peticionarios<br><br>v.<br><br>Consejo de Titulares del Condominio Metropolitan Professional Park<br><br>Recurridos<br><br>F. Castillo Properties, Inc.; Gam Realty S.C.S.E. y M.P.P. Realty, Inc.<br><br>Interventores-recurridos | CC-2011-0208 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 29 de diciembre de 2011.

En esta ocasión nos corresponde resolver si procedía desestimar el pleito de impugnación de acuerdos del Consejo de Titulares por el fundamento de cosa juzgada en su modalidad de fraccionamiento de la causa de acción.

Además, por primera vez, analizamos el alcance del Art. 38 (d)(3) de la Ley de Condominios de 2003, 31 L.P.R.A. sec. 1293b, en lo que concierne en los condominios exclusivamente comerciales, a la variación por mayoría del uso fijado a un área o a un local comercial o profesional, si así lo autoriza la escritura matriz.

Evaluadas las controversias, resolvemos primeramente que no aplica la doctrina de cosa juzgada en este caso.

Segundo, determinamos que los condominios exclusivamente comerciales sometidos al régimen de propiedad horizontal con anterioridad a la vigencia de la Ley de Condominios de 2003, que interesen variar el uso y destino de un área o un local comercial o profesional por la mayoría de votos de los condóminos, dispuesta en el Art. 38 (d) (3), supra, tendrán que realizar una enmienda a su escritura matriz. De lo contrario, necesitarán la unanimidad de votos que dispone el Art. 2 de la Ley de Condominios de 2003, 31 L.P.R.A. sec. 1291.

I

Esta controversia tiene su génesis en una demanda que presentaron los peticionarios, el matrimonio Szendrey-Ramos, por alteración del uso de unas áreas comunes del Condominio Metropolitan Professional Park (Condominio) en contravención con la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como Ley de Condominios, Ley Núm. 103, supra, y siguientes. Ladislaus M. Szendrey et als. v. F. Castillo Family Properties, Inc., et als., KAC 94-0402(902). La demanda se instó contra otros titulares-arrendadores y la arrendataria, la Administración de Corrección. En su demanda, el matrimonio Szendrey-Ramos adujo que varias áreas del inmueble se usaban en violación a lo dispuesto en la escritura matriz que constituyó el régimen de propiedad horizontal del edificio.

El 2 de septiembre de 2003, mientras ese primer pleito pendía en el Tribunal de Primera Instancia, el Consejo de Titulares del Condominio celebró una Asamblea

Extraordinaria con el propósito de enmendar la escritura matriz y adoptar varios acuerdos. El matrimonio Szendrey-Ramos presentó una moción en auxilio de jurisdicción ante el foro primario para que paralizaran la asamblea. Sin embargo, los cónyuges no tuvieron éxito. Por tanto, en esa asamblea de 2 de septiembre de 2003 se convino, lo siguiente, por mayoría, con la oposición de los peticionarios:

1) Una enmienda al uso del área del portero o área de guardería como un recibidor y sala de espera para los visitantes de todos los condóminos.

2) El uso de áreas comunes del piso terrero para colocar máquinas de refrescos, dulces y "snacks".

3) Una enmienda para colocar tablones de edictos en todos los pasillos.

4) Una enmienda a la cláusula cuarta de la escritura matriz para permitir en las unidades uno y dos de la planta terrera el uso comercial, profesional o de oficina.

5) Una enmienda para el cierre del final del pasillo del Piso 9 donde se encontraba la oficina del Administrador de Corrección.

Inconforme, el matrimonio Szendrey-Ramos presentó un pleito independiente de impugnación contra el Consejo de Titulares el 2 de octubre de 2003. Ladislaus M. Szendrey *et als.* v. Consejo de Titulares del Condominio Metropolitan Professional Park, KPE03-2535.

Con este segundo pleito los cónyuges pretendían anular los acuerdos alcanzados en la Asamblea de Titulares. Ese mismo día, los cónyuges presentaron una solicitud de interdicto preliminar para que se dejaran sin efecto los acuerdos alcanzados en la asamblea. El 20 de noviembre de 2003 el foro de instancia emitió una sentencia en la que ordenó al Consejo de Titulares, oficiales y directores abstenerse de firmar una escritura para enmendar la escritura matriz y cualquier documento necesario para enmendar el reglamento hasta que el tribunal dictara sentencia final. Ese dictamen fue posteriormente revisado y confirmado por el Tribunal de Apelaciones mediante sentencia de 13 de septiembre de 2004. Asimismo, denegamos el 3 de junio de 2005 una petición de *certiorari* que presentaron los demandados. También denegamos la moción de reconsideración.

Entonces, el 28 de junio de 2005, el Tribunal de Primera Instancia dictó sentencia en el pleito principal. El foro primario concluyó en su sentencia

> que el régimen de propiedad horizontal en el condominio en lo que respecta a las dos unidades del piso terrero es que éstas se dediquen a usos comerciales o de oficina. Asimismo, el régimen en lo que respecta a las 11 unidades de cada una de las 9 plantas típicas, requiere que en estas unidades se operen usos profesionales o de oficina.

> Apéndice del recurso, pág. 310.

Por ello, tras un análisis de la definición de "oficina", el foro de instancia razonó que

el uso de las unidades del piso 1 al 9 para fines de oficinas de Administración de Corrección no constituyen una violación a la Escritura Matriz ni al Art. 2 de la *Ley de Condominios*, *supra*. Las unidades están siendo destinadas a uno de los posibles usos consignados en la Escritura Matriz, un lugar donde trabajan empleados públicos.

Íd.

Asimismo, concluyó con relación a las dos unidades del piso terrero que están destinadas en la escritura matriz para usos comerciales o de oficina que

no habiéndose consignado en la Escritura Matriz una limitación al concepto "uso comercial", éste equivale a una negación de un "uso residencial". Por lo tanto al no haber la Administración de Corrección destinado las unidades del piso terrero a un uso residencial, las actividades que se realizan en éstas no infringen la Escritura Matriz ni el Art. 2 de la *Ley de Condominios*, *supra*…

Apéndice del recurso, pág. 311.

En el piso terrero la Administración de Corrección tenía un gimnasio, la oficina de capellanía, un depósito de armas, una oficina de enfermería o primeros auxilios, una oficina de correo, la oficina del director de seguridad y salones de conferencia.

También, el foro primario señaló que

En cuanto a la reclamación por operación de máquinas vendomáticas en un área de uno de los locales comerciales no es necesario abundar, por tratarse de una actividad comercial.
Íd.

Por otra parte, el foro de primera instancia analizó la alegación de los peticionarios en cuanto a que el área de portero general se estaba designando a un uso distinto

del consignado en la escritura matriz. Sobre ello determinó lo siguiente:

> Hemos examinado detenidamente la Escritura Matriz y de la misma no surge un "área de portero comunal". No obstante, considerado el croquis marcado Exh. 16 de la parte demandante y la evidencia testifical, entendemos que el área objeto de esta reclamación es el "área de servicio" que se menciona en el párrafo "Cuarto" de la Escritura Matriz.
>
> Tampoco surge de la Escritura Matriz el uso destinado para el "área de servicio". Por lo tanto, esta área es un elemento común general del inmueble no destinado a un uso específico.
> …
> Allá para el 1993 en esta área la Administración de Corrección colocó un guardia de seguridad o su cuadro telefónico. Al actuar así, violó el Art. 2, *supra*, por ésta haber usado con exclusividad un elemento común general. Aunque surge de la prueba que este uso fue modificado antes del inicio del juicio pasando a ser un área de espera de la Administración de Corrección. No surge de la prueba la fecha en que esto ocurrió.
>
> El último evento relacionado con esta área tuvo lugar en el año 2003. Los condóminos aprobaron por mayoría en la Asamblea Anual Especial de 2 de septiembre de 2003, que esta área será utilizada como área de espera para los visitantes de todas las oficinas, incluyendo la de los demandantes. Por lo que a esta fecha la solicitud de un remedio interdictal en cuanto a esta área se ha tornado académica. No así la reclamación de daños.

Apéndice del recurso, págs. 313-314.

Por último, sobre la ratificación en la asamblea del cierre del pasillo del piso número 9 donde estaba la oficina del Administrador de Corrección, el Tribunal de Primera Instancia señaló:

> En cuanto a la alegada violación al régimen por la colocación de escritorios en los pasillos comunes, resolvemos que la ilegalidad quedó establecida. El Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291[j], dispone que los pasillos pueden ser considerados elementos comunes limitados, siempre que así se acuerde expresamente por la totalidad de los titulares

del inmueble. Lo consignado en el párrafo Vigésimo Octavo de la Escritura Matriz satisface este requisito en cuanto a una porción de los pasillos si se dan las circunstancias que allí se contempla[n]. En este caso la colocación de escritorios en los pasillos no cumplió con lo establecido por la Escritura Matriz, por razón de que no integran dos o más unidades para que formen un solo cuerpo.

Apéndice del recurso, pág. 316.

En síntesis, el Tribunal de Primera Instancia declaró con lugar algunas de las reclamaciones de los esposos Szendrey-Ramos y condenó a los demandados al pago de daños y perjuicios. Otras de las reclamaciones las desestimó por insuficiencia de prueba. Asimismo, expidió el injunction y le ordenó a los demandados cesar y desistir de utilizar de forma exclusiva las áreas comunes.

Inconformes, los peticionarios interpusieron el 19 de julio de 2005 una solicitud de determinaciones de hechos adicionales a tenor con la Regla 43.3 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, vigente al momento de los hechos. Asimismo lo hicieron varios codemandados. Con relación a esta solicitud surgieron varios inconvenientes que paralizaron el trámite procesal. Específicamente, surgió una controversia en cuanto a si hubo justa causa para que los peticionarios notificaran tardíamente esa solicitud a varios codemandados.

Conscientes de que no había justa causa para la notificación tardía, los peticionarios presentaron una primera apelación el 6 de septiembre de 2005. Aún pendían ante el Tribunal de Primera Instancia las mociones de las partes con relación a las determinaciones de hechos

adicionales y la determinación sobre si hubo justa causa para la notificación tardía. El Tribunal de Apelaciones acogió el recurso pero nosotros revocamos esa apelación por prematura. Véase, S.L.G. Szendrey-Ramos v. F. Castillo, 169 D.P.R. 873 (2007).

Así pues, el pleito principal volvió al foro primario para que ese foro dilucidara los asuntos que pendían ante su consideración. Sin embargo, el Tribunal de Primera Instancia emitió una resolución mediante la cual declaró que no tenía nada que proveer ya que la sentencia en el primer pleito era final y firme. Inconformes nuevamente, los peticionarios presentaron una apelación contra la sentencia en sus méritos y un recurso de *certiorari* de la resolución que adjudicó que la sentencia era final y firme.

Luego de evaluar los recursos, el foro apelativo intermedio los consolidó y resolvió que la sentencia de instancia no era final y firme. Por ello, ordenó al foro de instancia cumplir con nuestra decisión (S.L.G. Szendrey-Ramos v. F. Castillo, supra) y desestimó el *certiorari* por prematuro.

Tras varios trámites que incluyeron dos desestimaciones adicionales del recurso por prematuro ante el Tribunal de Apelaciones, finalmente el foro de instancia determinó que no hubo justa causa para la notificación tardía de las mociones de determinaciones de hechos adicionales. Así pues, concluyó el Tribunal de Primera Instancia que éstas no interrumpieron el término

para ir en alzada. Por ende, concluyó que la sentencia de 28 de junio de 2005 era final y firme.

Insatisfechos nuevamente, los peticionarios acudieron al Tribunal de Apelaciones. El foro apelativo intermedio resolvió que no tenía jurisdicción porque el recurso de revisión fue presentado tardíamente. Se basó en que no hubo justa causa para la notificación tardía de la petición de determinaciones de hechos adicionales que pretendía interrumpir el término para apelar. Por ello, razonó el Tribunal de Apelaciones que la sentencia del Tribunal de Primera Instancia era final y firme.

Inconformes, el matrimonio Szendrey-Ramos acudió ante este Foro. El 21 de mayo de 2009 emitimos sentencia en la que determinamos que la primera sentencia no era final y firme. Tras un análisis de los hechos, señalamos que el matrimonio Szendrey-Ramos impugnó la sentencia del Tribunal de Primera Instancia en cuatro ocasiones y que las primeras tres apelaciones fueron desestimadas por el Tribunal de Apelaciones, por prematuras.

Explicamos que el último recurso era oportuno y por consiguiente, resolvimos que no procedía desestimarlo. Por lo tanto, devolvimos el caso al Tribunal de Apelaciones para que continuara con los procedimientos.

En el segundo pleito los peticionarios presentaron una solicitud de sentencia sumaria. En su moción, alegaron que como el Consejo de Titulares admitió que no contaba con su consentimiento para realizar los cambios que impugnó en el primer pleito, no se cumplió con el

requisito de unanimidad que exige la Ley de Condominios, _supra_, para variar el uso y destino de las áreas comunes. Por ello, tras entender que no había controversia de hechos, solicitaron que se dictara sentencia sumaria a su favor y se declararan nulos e inexistentes los acuerdos tomados en la asamblea celebrada el 2 de septiembre de 2003. Asimismo, peticionaron una orden de interdicto permanente con la que se prohibiera al Consejo de Titulares implantar los acuerdos alcanzados en la mencionada asamblea.

Por su parte, las interventoras GAM Realty SC CE y MPP Realty Inc., y el Consejo de Titulares, presentaron sus respectivas oposiciones a la moción de sentencia sumaria y a la vez solicitaron que se dictara sentencia sumaria a su favor. En síntesis, alegaron que no existía fundamento válido que justificara la acción de los peticionarios de bifurcar o fraccionar las controversias, ya que estas pudieron haberse incluido en el primer pleito. En su oposición a estas mociones, la parte peticionaria señaló que no aplicaba la doctrina de cosa juzgada ya que la sentencia en el pleito principal no era firme. Asimismo, señaló que no había identidad de causas ya que en el primer pleito se cuestionó el uso que se le estaba dando a elementos comunes del condominio en violación a la escritura matriz, mientras que en el segundo litigio lo que se impugnaba eran los acuerdos tomados por el Consejo de Titulares para variar los usos establecidos en la escritura matriz.

El 21 de mayo de 2007, notificada el día 25 del mismo mes y año, el Tribunal de Primera Instancia dictó sentencia respecto al segundo pleito. En esta, el tribunal desestimó el pleito de impugnación fundamentándose en la doctrina de cosa juzgada. Entendió que la sentencia en el pleito principal era final y firme, ya que, contrario a la postura de la parte peticionaria, había concurrencia de las causas porque el motivo de pedir era vindicar el régimen de propiedad horizontal. Asimismo, el tribunal concluyó que "por no haberse celebrado el juicio en el pleito KAC1994-0402 [pleito principal] para el 2 de septiembre de 2003, fecha en que se celebró la Asamblea Anual Especial, no había razón válida alguna para no solicitar autorización para enmendar la demanda de ese pleito e incluir la impugnación de los acuerdos". Apéndice del recurso, pág. 67. Por ello, concluyó que era de aplicación la doctrina de cosa juzgada en su modalidad de fraccionamiento de la causa de acción. El foro primario fundamentó su razonamiento en que los peticionarios expresaron que instaron el pleito de impugnación para que no se tornara académico el pleito principal.

Inconformes con ese dictamen, el 13 de julio de 2007 el matrimonio Szendrey-Ramos acudió al Tribunal de Apelaciones. Ese foro confirmó la sentencia del Tribunal de Primera Instancia el 20 de enero de 2011. Razonó que cuando el matrimonio Szendrey-Ramos reconoció que no había justa causa para la notificación tardía de la notificación de su moción al amparo de la Regla 43.3 de Procedimiento

Civil, _supra_, procedía la desestimación del pleito de impugnación. Así pues, el tribunal concluyó que la sentencia era firme. Además, expresó que la conclusión del Tribunal de Primera Instancia de que no había razón válida alguna para no solicitar autorización para enmendar la demanda del pleito principal e incluir la impugnación de los acuerdos, fue producto de las determinaciones del propio Tribunal de Primera Instancia, que indujo a los peticionarios a someter una nueva causa de acción. Por ello, concluyó que el fraccionamiento de la causa de acción se produjo por la decisión de ese foro. Sin embargo, el foro intermedio determinó que el segundo pleito era cosa juzgada, ya que las partes en el primer y segundo pleito litigaban en la misma calidad; que en ambos pleitos se pidió idéntico o análogo remedio; que había una sentencia válida, final y firme que adjudicó los hechos y resolvió una controversia en sus méritos; y por último, que se trataba del mismo objeto en ambos pleitos o su fin era el mismo.

Entonces, el 16 de marzo de 2011 el matrimonio Szendrey-Ramos acudió ante nos. Concedimos a las partes recurridas un término para que mostraran causa por la cual no se debía expedir el _certiorari_ y revocar la sentencia del Tribunal de Apelaciones. Los recurridos solicitaron una prórroga que declaramos no ha lugar. Posteriormente, solicitaron reconsideración de la denegación de la prórroga. En esta, adujeron que el 10 de mayo de 2011 se

celebró una Reunión Extraordinaria de Titulares[1] del Metropolitan Professional Park mediante la cual se aprobó, por mayoría y con la oposición de los peticionarios, dejar sin efecto el siguiente acuerdo, alcanzado por el Consejo de Titulares en la asamblea de 2 de septiembre de 2003:

> Enmendar los usos permitidos en la planta terrera del Edificio "ground floor", con el propósito de de [sic] corregir una inconsistencia en la Escritura Matriz de acuerdo con la realidad del uso actual que los condóminos están efectuando en dicho piso terrero. Se propone específicamente enmendar la cláusula cuarta de la Escritura Número 188 sobre Constitución del Régimen de Propiedad Horizontal, otorgada el 3 de julio de 1991, así como enmendar los usos permitidos en las unidades comerciales 1 y 2 de la planta terrera a los efectos de que puedan ser utilizados para uso comercial, profesional y/o oficinas.
>
> Moción Solicitando reconsideración y solicitud de desestimación, Anejo, III, pág. 2.

Por ello, los recurridos solicitaron la desestimación del pleito. Invocaron la doctrina de academicidad. En su réplica, la parte peticionaria alegó que no procede desestimar el pleito por academicidad ya que este caso ejemplifica la excepción de una controversia capaz de repetirse y evadir su revisión. Adujo que le corresponde a los recurridos demostrar que el cambio de conducta no solo persigue lograr la desestimación de este pleito sino además concluir la controversia de manera permanente y con una expectativa razonable de que el cambio de conducta no sería revertido.

---

[1] A esta asamblea asistieron todos los titulares, excepto el señor Ladislaus Szendrey, quien fue representado por su esposa, la señora Ramos de Szendrey.

Con las alegaciones de las partes y el expediente ante nuestra consideración, estamos en posición de resolver.

II

De entrada, es menester señalar que los tribunales debemos intervenir únicamente en controversias que sean justiciables. Asoc. Fotoperiodistas v. Rivera Schatz, Op. de 24 de febrero de 2011, 2011 T.S.P.R. 22, 2011 J.T.S. 27, 180 D.P.R.___ (2011); Moreno v. Pres. U.P.R. II, 178 D.P.R. 969, 973 (2010); Lozada Tirado et al. v. Testigos Jehová, 177 D.P.R. 893, 907 (2010); E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958). Es decir, solo ejerceremos nuestra función revisora en "controversias reales y vivas, en las cuales existan partes con intereses encontrados cuyo propósito sea obtener un remedio que tenga un efecto sobre la relación jurídica". Asoc. Fotoperiodistas v. Rivera Schatz, supra. Véanse, además, Torres Santiago v. Depto. de Justicia, Op. de 25 de mayo de 2011, 2011 T.S.P.R. 78, 2011 J.T.S. 83, 181 D.P.R. __ (2011); E.L.A. v. Aguayo, supra, pág. 584. 715, 720 (1980); Flast v. Cohen, 392 U.S. 83 (1968).

Al encontrarnos ante la interrogante sobre si una controversia es o no justiciable debemos evaluar

si ésta es (1) tan definida y concreta que afecte las relaciones jurídicas entre las partes que tienen un interés jurídico antagónico; (2) que el interés sea real y substancial y que permita un remedio específico mediante una sentencia de carácter concluyente; y finalmente (3) si la controversia es propia para una determinación judicial, ya que se distingue de una disputa de

carácter hipotético o abstracto, y de un caso académico o ficticio.

Asoc. Fotoperiodistas v. Rivera Schatz, supra. Véase, además, E.L.A. v. Aguayo, supra, pág. 584.

Así pues, hemos establecido en el pasado que no será justiciable aquella controversia en la que (1) se trata de resolver una cuestión política; (2) una de las partes no tiene legitimación activa; (3) después que ha comenzado el pleito, hechos posteriores la convierten en académica; (4) las partes buscan obtener una opinión consultiva; o (5) se promueve un pleito que no está maduro. Asoc. Fotoperiodistas v. Rivera Schatz, supra. Véase, además, Noriega v. Hernández Colón, 135 D.P.R. 406, 421-422 (1994).

La academicidad es una de las doctrinas que autolimitan la intervención de los tribunales. Íd. Véase, además, Rullán v. Fas Alzamora, 166 D.P.R. 742, 761 (2006). Estamos ante un caso académico cuando "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". Íd. En síntesis, "un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se ha perdido". San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 652 (2008).

Ahora bien, la doctrina de la academicidad admite excepciones que, aunque deben utilizarse con mesura, permiten la intervención de los tribunales ante situaciones en las que las controversias parecen no ser justiciables. Asoc. Fotoperiodistas v. Rivera Schatz, supra; Moreno v. Pres. U.P.R. II, supra, pág. 974. Hemos señalado como excepción a la academicidad las situaciones en la que los tribunales se encuentran ante: (1) una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando el demandado ha modificado la situación de hechos, pero el cambio no aparenta ser permanente; y (3) cuando aspectos de la controversia se tornan académicos pero subsisten consecuencias colaterales que tienen vigencia y actualidad. Asoc. Fotoperiodistas v. Rivera Schatz, supra. Véase, además, U.P.R. v. Laborde Torres y otros I, Op. de 13 de diciembre de 2010, 2010 T.S.P.R. 225, 2010 J.T.S. 234, 180 D.P.R. ___ (2010); Báez Díaz v. E.L.A., supra; Moreno v. Pres. U.P.R. II, supra, pág. 974.

En su réplica a la moción de reconsideración y solicitud de desestimación presentada, la parte peticionaria aduce que los recurridos convocaron a una reunión extraordinaria del Consejo de Titulares del Metropolitan Professional Park para dejar sin efecto los acuerdos alcanzados en la asamblea de 2 de septiembre de 2003. Sin embargo, los peticionarios entienden que

> con tal actuación los apelados dejaban sin efecto
> los acuerdos ilegalmente pactados desde el 2003,
> y en consecuencia unilateral y espuriamente
> creaban una situación que les permitiese plantear
> ante este Honorable Tribunal Supremo la

academicidad de este recurso que cuestiona dichos acuerdos. Ello, distinto a la alternativa de lograr un acuerdo transaccional, obligatorio para **todos** los titulares del Condominio, **obligándose permanentemente a no intervenir con los usos dispuestos en la escritura** del régimen de propiedad horizontal del Condominio Metropolitan Professional Park.

Escrito para Cumplir Orden y Reiterando Súplica de Trámite Expedito de Petición, pág. 2.

Específicamente, los peticionarios esbozan que este pleito presenta la excepción de una controversia capaz de repetirse y evadir su revisión. Entienden que los demandados "han modificado la situación de hechos que dio paso al litigio, teniendo absoluto control sobre los hechos que crean o artificialmente disuelven controversias". Escrito para Cumplir Orden y Reiterando Súplica de Trámite Expedito de Petición, pág. 5.

El caso ante nuestra consideración no presenta la excepción de una controversia capaz de repetirse y evadir su revisión. Concluir eso conllevaría "adentrarnos en el campo de la especulación". Moreno v. Pres. U.P.R. II, supra, pág. 976. Véase además, Asoc. Fotoperiodistas v. Rivera Schatz, supra. Sin embargo, el acuerdo alcanzado en la asamblea de 10 de mayo de 2011 no dispone de todas las reclamaciones de los peticionarios. Cabe recordar que en la asamblea de 2 de septiembre de 2003 se tomaron cinco acuerdos para enmendar la escritura matriz, de los cuales la parte peticionaria cuestiona tres en su recurso. En la última asamblea, solo se dejó sin efecto uno de esos acuerdos. En específico, se dejó sin efecto el acuerdo relacionado con la enmienda a la cláusula cuarta de la

escritura matriz para permitir que las unidades comerciales 1 y 2 de la planta terrera fueran utilizadas para uso comercial, profesional y de oficinas. Adviértase que nunca se llevó a cabo una enmienda a la escritura matriz. Lo único que consta es el cambio en el acuerdo alcanzado en la asamblea de 2 de septiembre de 2003. Por ello, aún quedan pendientes los acuerdos que impugnan los peticionarios en cuanto a los cambios en el uso y destino del área del portero y de la oficina del administrador en el piso terrero a recibidor y salón de espera, el acuerdo relacionado con la división de la unidad comercial uno y el acuerdo para permitir la colocación de máquinas de refrescos y "snacks". Es decir, quedan controversias pendientes sobre las que los peticionarios no han obtenido un remedio todavía.

Aclarada nuestra jurisdicción, pasemos entonces a analizar los principios generales de la doctrina de cosa juzgada.

### III

El Artículo 1204 del Código Civil, 31 L.P.R.A. sec. 3343, tipifica la doctrina de cosa juzgada. Esta figura, de origen romano, es una presunción que opera cuando "entre el caso resuelto por la sentencia y aquel en que esta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". Rodríguez v. Sucesión de Pirazzi, 89 D.P.R. 506, 519 (1963). Véase además, Mun. de San Juan v. Bosque Real S.E., 158 D.P.R.

743, 769 (2003); Worldwide Food Distributors, Inc. v. Colón Bermúdez, 133 D.P.R. 827, 833 (1993). Es decir, "[p]or cosa juzgada se entiende lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad". Parrilla v. Rodríguez, 163 D.P.R. 263, 268 (2004), citando a J.M. Manresa, Comentarios al Código Civil Español, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 278.

Como señalamos en Mun. de San Juan v. Bosque Real S.E., supra, pág. 769, esta "doctrina está fundamentada en el interés del Estado en ponerle fin a los litigios y en proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial". Véase además, Pérez v. Bauzá, 83 D.P.R. 220, 225 (1961). "De esa manera se evita que tanto el sistema de administración de justicia como las partes incurran en gastos innecesarios". Parrilla v. Rodríguez, supra, pág. 268. Como mecanismo de defensa, "[e]l efecto de la aplicación de esta doctrina es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado". Mun. de San Juan v. Bosque Real S.E., supra, pág. 769. Véase además, Parrilla v. Rodríguez, supra, pág. 268.

No obstante lo anterior,

> la doctrina de cosa juzgada no impide que se interponga un nuevo pleito en el que, en primera instancia, se dilucide la extensión

> como cosa juzgada del dictamen en el pleito anterior sobre el subsiguiente, siempre con la salvedad de que en ese segundo litigio no se examinará la sabiduría y corrección del primer pleito, sino la configuración de la doctrina.
>
> Íd., citando a Manresa, op. cit., págs. 278-279.

Este Tribunal se ha negado a aplicar la doctrina de cosa juzgada de forma automática. Íd., pág. 271. Aunque reconocemos "su valor para el adecuado tráfico jurídico de las causas individuales, en observancia con los fines de la justicia y en consideración al mejor interés público, hemos intervenido para permitir que las partes ventilen sus reclamos en los méritos". Íd. Esto último ocurre cuando intereses públicos mayores lo ameriten. Méndez v. Fundación, supra, pág. 268; Pérez v. Bauzá, supra, págs. 226-227; Millán v. Caribe Motors Corp., 83 D.P.R. 494, 508-509 (1961).

En primer lugar, "[p]ara que prospere la excepción de cosa juzgada es necesaria la concurrencia de cuatro identidades: dos objetivas -cosa y causa;…; y dos subjetivas -personas y representación". A & P. Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 763 (1981). Es decir,

> [l]os requisitos para aplicar la doctrina de cosa juzgada son que:(1) haya una primera sentencia válida, final y firme;(2) las partes, en el primer litigio, sean las mismas en el segundo;(3)en ambos pleitos se trate del mismo objeto o asunto;(4)en el primer pleito se haya pedido igual remedio que el que se pida en el segundo, y; (5) las partes litiguen en la misma calidad en ambos pleitos.
> Bonafont Solís v. American Eagle, 143 D.P.R. 374, 383 (1997).

Por su parte, el impedimento colateral por sentencia es una modalidad de la doctrina de cosa juzgada. _P.R. Wire Prod. v. C. Crespo Assoc._, 175 D.P.R. 139, 152(2008). Véase además, _Molini Gronau v. Corp. P.R. Dif. Púb._, 179 D.P.R. 674, 685 n. 7 (2010); _Méndez v. Fundación_, 165 D.P.R. 253, 268 (2005); _Fatach v. Triple S, Inc._, 147 D.P.R. 882, 889 (1999). Esta figura "opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas". _Coop. Seg. Múlt. v. E.L.A._, Op. de 14 de enero de 2011, 2011 T.S.P.R. 05, 2011 J.T.S. 10, 180 D.P.R. __ (2011). Principalmente, el impedimento colateral por sentencia "se distingue de la cosa juzgada en que para aplicar la primera no es necesario que se dé el requisito de identidad de causas necesario para la segunda". Íd.

En cuanto a la defensa de cosa juzgada, en su aspecto de fraccionamiento de causa de acción hemos dicho que "se aplica a toda reclamación posterior entre las mismas partes sobre el mismo asunto". _Avellanet v. Porto Rican Express_, 64 D.P.R. 693 (1945); _Cruz v. Ortiz_, 82 D.P.R. 834 (1961). El propósito de "la defensa de cosa juzgada, _en su aspecto_ de _fraccionamiento de causa de acción_, es promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con

el mismo asunto". Crespo Cardona v. Autoridad de Carreteras, 136 D.P.R. 938, 947 (1994), Opinión disidente del Juez Asociado señor REBOLLO LÓPEZ. Véase, además, Zambrana v. Tribunal Superior, 100 D.P.R. 179 (1971).

De entrada, es menester evaluar si se cumplieron los requisitos que esboza la doctrina para que opere la defensa de cosa juzgada en el presente caso. Como señaláramos, el primero de estos requisitos es que haya una primera sentencia válida, final y firme.

En lo que respecta a una sentencia final y firme cabe apuntar que "[u]na vez que se archiva en autos la notificación y se registra la sentencia, ésta se considera **final**. A partir de ese momento los derechos y obligaciones de las partes quedan adjudicados y la sentencia goza de una presunción de corrección." (Énfasis nuestro). R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 5ta. Ed., San Juan, P.R., LexisNexis, 2010, Sección 4106, pág. 378. Véase, además, Vargas v. González, 149 D.P.R. 859 (1999). Por consiguiente, "la sentencia se convierte en firme según el transcurso del tiempo. **Es firme una vez transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho, o al concluir el proceso apelativo**". Hernández Colón, op cit., pág. 379. Es decir, una sentencia es final y definitiva "cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia". Cortés Román v. E.L.A., 106 D.P.R. 504, 509

(1977) citando a <u>Dalmau v. Quiñones</u>, 78 D.P.R. 551, 556 (1955). Mientras, "[l]a adjudicación se presume válida y correcta hasta tanto sea reconsiderada, modificada o revocada mediante un remedio o recurso". Hernández Colón, <u>op cit.</u>, pág. 378.

Según surge de los hechos antes narrados, en nuestra sentencia de 21 de mayo de 2009 determinamos que el primer pleito no era final y firme. Lo devolvimos al Tribunal de Apelaciones para que continuara con los procedimientos. Sin embargo, el 20 de mayo de 2011 el foro apelativo intermedio emitió sentencia en el pleito principal, que a esta fecha no es final y firme.

Tampoco se cumple en este pleito con el requisito de identidad de causas. En el pleito principal se cuestionaba el uso que los titulares le daban a varios elementos comunes del edificio. Por otro lado, en el segundo pleito, se impugnan los acuerdos alcanzados en la asamblea celebrada el 2 de septiembre de 2003. Por ello, los reclamos en uno y otro pleito no son los mismos.

Además, la alegación de los recurridos de que en este pleito procedía la defensa de cosa juzgada en su modalidad de fraccionamiento de la causa de acción también es errada. Aquí no había una sentencia final y firme en el primer pleito al momento en que se presentó el segundo pleito de impugnación de los acuerdos de la asamblea de 2 de septiembre de 2003.

Por ello, a la luz de lo anteriormente discutido, forzosamente concluimos que no se configuraron los

requisitos necesarios para que opere la defensa de cosa juzgada en este caso. Dilucidada la primera controversia, evaluemos entonces si procedía la moción de sentencia sumaria solicitada por la parte peticionaria.

Con el beneficio del derecho reseñado, pasemos a analizar las disposiciones de la Ley de Condominios que permiten enmendar la escritura matriz.

## IV

Ya en varias ocasiones hemos manifestado que las disposiciones de la Ley de Condominios de 2003 "regirán a todo inmueble sometido al régimen de Propiedad Horizontal, cualquiera que sea el momento en que fuera sometido a dicho régimen." Pereira Suárez v. Jta. Dir Cond., Op. de 30 de junio de 2011, 2011 T.S.P.R. 102, 2011 J.T.S. 107, 182 D.P.R. __ (2011); S.L.G. Vázquez-Ibáñez v. De Jesús, Vélez, Op. de 14 de diciembre de 2010, 2010 T.S.P.R. 227, 2010 J.T.S. 236, 180 D.P.R. __ (2010); Consejo Titulares v. Williams Hospitality, 168 D.P.R. 101, 108 (2006). Véase, además, Art. 44 en la nota de la Ley de Condominios, 31 L.P.R.A. sec. 1239. Claro está, como señalamos en Consejo Titulares v. Williams Hospitality, supra, pág. 108, "aun cuando la ley disponga su efecto retroactivo o así surja de la intención legislativa, ésta no podrá afectar derechos adquiridos por las partes en virtud de la legislación anterior". Ahora bien, cabe aclarar que

> el derecho adquirido no puede ser el conjunto de facultades que la ley anterior permitía que los ciudadanos ejercitaran, ya que esto sería el estado de derecho objetivo que la nueva ley intenta cambiar. El derecho adquirido, en cambio, es una situación consumada, en la que las partes afectadas descansaron en el estado de derecho que regía al amparo de la ley anterior.

Íd., pág. 109.

Por consiguiente, la aplicación retroactiva de la Ley de Condominios, supra, dependerá de la situación particular que se suscite. Es decir, "[n]uestra contestación dependerá de la situación jurídica que se pretenda reclamar con arreglo a la legislación antigua". Íd., pág. 110. Así, por ejemplo, no puede impugnarse un acuerdo en virtud del estatuto actual, que fue aprobado por el número de titulares que disponía en aquel entonces la ley. Ahora bien, distinto es el escenario, por ejemplo, cuando lo que se pretende hacer es avalar un acuerdo nuevo conforme al número de titulares requerido por la ley derogada. Es decir, cuando se pretende actuar sin observar los requisitos de la nueva ley no estamos ante derechos adquiridos. Íd.

Así pues, ya que la asamblea en la que se tomaron los acuerdos que son objeto de impugnación en el presente pleito fue celebrada el 2 de septiembre de 2003, es decir, luego de la vigencia de la Ley de Condominios de 2003, supra, que entró en vigor el 4 de julio de 2003, analizaremos la controversia a la luz de ese estatuto. Véase, Art. 44 de la Ley de Condominios, supra.

V

La escritura matriz constituye "la fuente vinculante para los condóminos, luego de la Ley". M. J. Godreau, El condominio: El régimen de propiedad horizontal en Puerto Rico, 1ra ed., Río Piedras, Puerto Rico, Editorial Dictum, 1992, pág. 71. Es pues,

> …un estatuto privado --al cual se adhieren los titulares cuando compran sus respectivos apartamentos-- que gobierna a los condóminos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales disposiciones violen la ley, la moral o el orden público.
>
> Consejo Tit. Cond. McKinley Court v. Rullan, 126 D.P.R. 387, 394(1990)(Sentencia).

Véase, además, Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582 (1973); Soto Vázquez v. Vázquez Torres,138 D.P.R. 282 (1995).

Explica el profesor Godreau, con relación al Art. 2 de la anterior Ley de Propiedad Horizontal, que

> [e]n la escritura matriz, por disposición del artículo 2, § 1291, se expresará "clara y precisamente el uso a que será destinada toda área comprendida en el inmueble, y una vez fijado dicho uso sólo podrá ser variado mediante el consentimiento **unánime** de los titulares. (Énfasis nuestro.)

Íd.

Sin embargo, enfatiza Godreau que "esta disposición habrá que entenderla en sentido amplio". Íd. Es decir,

> si en la escritura matriz se destina un local para oficina de administración, quedará a discreción de la Junta de Directores o del Consejo de Titulares el uso particular que deba dársele a tal local, siempre y cuando tal uso pueda catalogarse como parte de la gestión administrativa. De igual forma, si un local se destina para "salón de reuniones", puede el mismo

utilizarse para diversas actividades, como juegos de mesa, fiestas, espectáculos, servicios religiosos, etc., aunque las mismas no puedan catalogarse estrictamente como "reuniones". En forma similar, si en la escritura matriz se destina algún apartamiento como "para oficina médica", debe entenderse que la limitación del uso se refiere a que sea una oficina profesional relacionada con la medicina y no a que esté prohibido montar, por ejemplo, una oficina de psicólogos.

Íd.

De la misma forma, cuando se quiera prohibir específicamente una actividad

tendría que cumplir con los requisitos de cualquier condición restrictiva o servidumbre en equidad,… consignando expresamente en la escritura matriz que tal apartamiento o local **no** puede utilizarse para otra clase de actividad. Tales restricciones representan una verdadera alteración del régimen normal de la propiedad, la cual se presume libre de cargas y gravámenes. (Énfasis en el original.)

Íd., págs. 72-73.

Así pues, la escritura matriz es el mapa que guiará con relación al destino y uso de las áreas que comprenden el inmueble. Por tanto, una vez se fija el destino y el uso de un área del inmueble en la escritura matriz, este únicamente podrá ser variado con el consentimiento unánime de todos los titulares.

Con las enmiendas introducidas en el 2003, el Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291, no sufrió cambios sustanciales. Actualmente dispone:

…

La escritura que establezca el régimen de propiedad horizontal expresará clara y precisamente el **destino y uso de** toda área comprendida en el inmueble, **y, excepto que este**

**capítulo autorice lo contrario, una vez fijado dicho destino y uso** sólo podrá ser variado mediante el consentimiento unánime de los titulares.(Énfasis suplido.)

El texto enfatizado recoge los cambios añadidos por la enmienda a la ley en el 2003. Como vemos, no se alteró el requisito de unanimidad para variar el uso y destino de las áreas comprendidas en el inmueble conforme lo que se dispone en la escritura matriz.

Ahora bien, el Art. 38(d)(3), _supra_, dispone otro estándar para variar el uso y destino de un área o un local comercial o profesional en los **condominios exclusivamente comerciales**. En lo pertinente, el artículo dispone:

…

En los condominios exclusivamente comerciales o profesionales, las dos terceras partes (2/3) de los titulares, que a su vez, reúnan las dos terceras partes (2/3) de las participaciones en los elementos comunes del inmueble, podrán aprobar las obras de mejora que estimen pertinentes, sin que para ello tengan que estar disponibles el dinero en el fondo de reserva que se establece en esta sección. Por igual número de votos, podrá variarse el uso fijado a un área o a un local comercial o profesional, si así lo autoriza la escritura matriz.

Es decir, el Art. 38(d)(3) es la excepción a la regla general dispuesta en el Art. 2 de la Ley de Condominios, _supra_. Como vemos, en el Art. 38(d)(3) se autoriza, contrario a lo dispuesto en el Art. 2, _supra_, que en los condominios exclusivamente comerciales se varíe el uso de un área dispuesta en la escritura matriz si así se aprueba

con el voto de las dos terceras partes de los titulares, que a su vez, reúnan las dos terceras partes de las participaciones en los elementos comunes del inmueble.

Ahora bien, ese Art. 38(d)(3), _supra_, impone una restricción adicional para variar el uso y destino originalmente dispuesto en un edifico comercial. Eso solo es posible si la escritura matriz autoriza dicho cambio. Es decir, si la escritura matriz no autoriza ese voto, entonces no podrá llevarse a cabo el cambio con el voto de las dos terceras partes de los titulares, que a su vez, reúnan las dos terceras partes de las participaciones en los elementos comunes del inmueble. En ese caso, se tendrá que contar con el consentimiento unánime de todos los titulares, como establece la regla general dispuesta en el Art. 2, _supra_. Claro está, como el Art. 38(d)(3), _supra_, se añadió mediante la Ley de Condominios de 2003, _supra_, las escrituras matrices de los condominios sometidos al régimen de propiedad horizontal antes de esa fecha no incluyen una cláusula para variar el uso fijado a un área o a un local comercial o profesionales por el voto de las dos terceras partes de los titulares, que a su vez, reúnan las dos terceras partes de las de las participaciones en los elementos comunes. Por ello, los condominios exclusivamente comerciales sometidos al régimen de propiedad horizontal con **anterioridad** a la vigencia de la Ley de Condominios de 2003, que interesen variar el uso y destino de un área o un local comercial o profesional por la mayoría de votos de los condóminos dispuesta en el Art.

38(d)(3), <u>supra</u>, tendrán que realizar una enmienda a su escritura matriz para incluir una cláusula que lo permita. De lo contrario, necesitarán la unanimidad de votos que dispone el Art. 2, <u>supra</u>.

Por consiguiente, corresponde preguntarnos si los acuerdos aprobados en la asamblea de 2 de septiembre de 2003 constituyeron enmiendas a la escritura matriz para las cuales se requería el consentimiento unánime de todos los titulares del Metropolitan Professional Park. Analicemos por separado cada uno de los acuerdos que impugna la parte peticionaria en su alegato ante este Tribunal y que no se hicieron académicos por el acuerdo subsiguiente de 10 de mayo de 2011.[2]

**A) Enmienda a la escritura matriz para permitir la colocación de máquinas de refrescos y "snacks".**

Con relación a este asunto, la parte peticionaria aduce que "la unidad comercial está específicamente destinada a usos estrictamente comerciales, según como surge de la escritura matriz, párrafo sexto, páginas (9) a la once (11)". <u>Apéndice de la Petición de <i>certiorari</i></u>, pág. 11.

En <u>Soto Vázquez v. Vázquez Torres</u>, 138 D.P.R. 282, 292-293 (1995) explicamos:

> En un condominio comercial se justifica aún más una interpretación restrictiva de las limitaciones al uso de los locales cuando, como en el caso de autos, se intenta

---

[2] No discutiremos la alegada división de la unidad comercial uno pues no formó parte de los acuerdos alcanzados en la asamblea de 2 de septiembre de 2003.

restringir el uso comercial dispuesto en la escritura a un uso comercial particular. **La utilización variada de un local es una de las cualidades más importante cuando el mismo se utiliza para propósitos comerciales. La flexibilidad brindada a esos efectos en gran medida influye sobre el precio y la mercadeabilidad.** Audrey Loeb, *Condominium Law and Administration 8-1* (1989).

Por otro lado, nos parece pertinente el hecho de que el concepto "uso comercial" es más abarcador que el concepto "uso residencial". Así, cuando en una escritura se restringe el uso o destino de los apartamentos a fines residenciales, la estrechez del concepto informa clara y debidamente al adquiriente las limitaciones impuestas a su derecho propietario. **Sin embargo, cuando se restringe el uso de un local a "uso comercial", podemos pensar en una multiplicidad de actividades que se pueden ubicar bajo dicho calificativo. Es decir, el término es tan abarcador que en la mayoría de los casos equivale a una negación de un uso residencial, sin límites en cuanto a los posibles usos relacionados con el "comercio".** De esta manera, el tercero interesado, aunque percibe una restricción a sus derechos propietarios, puede entender que se le ha brindado cierta flexibilidad en cuanto a los usos posibles de su propiedad.

Por lo tanto, entendemos que al intentarse restringir el uso comercial a un uso particular, la interpretación de las cláusulas restrictivas del dominio debe ser aún más estricta, pues se debe informar con mayor claridad a los nuevos titulares la existencia de una restricción adicional que modifica la amplitud del concepto de "uso comercial". Una limitación del derecho propietario de esa magnitud así lo justifica. Ésta debe surgir de la escritura matriz con suma claridad. (Énfasis nuestro.)

Véase, además, <u>Rodríguez, et al. v. Gómez et al.</u>, 156 D.P.R. 307, 322-323 (2002).

El foro primario determinó que "[e]n cuanto a la reclamación por operación de máquinas vendomáticas en un área de uno de los locales comerciales no es necesario

abundar, por tratarse de una actividad comercial". Estamos de acuerdo con esa conclusión. La venta de dulces, refrescos y piscolabis es precisamente una actividad comercial permitida en el área que estaba denominada en la escritura matriz como una comercial. Tampoco encontramos prohibición en la escritura para que estas máquinas sean colocadas en esa área. Este razonamiento es cónsono con las expresiones del profesor Godreau en cuanto a que los usos y destinos dispuestos en la escritura matriz deben interpretarse en sentido amplio y con nuestros pronunciamientos en Soto Vázquez v. Vázquez Torres, supra.

**B) Cambios en el uso y destino del área del portero y de la oficina del administrador en el piso terrero a recibidor o salón de espera.**

Por último, al aprobarse la utilización del área del portero y el área de guardería para que se establezca allí un recibidor y sala de espera para los visitantes de todos los condóminos, no se violentó el uso y destino del área conforme se estipuló en la escritura matriz.

De las determinaciones del foro de primera instancia surge que luego de examinar la escritura matriz y el croquis presentado por la parte peticionaria, el área objeto de la reclamación es el "área de servicio" mencionada en el párrafo cuarto de la escritura matriz. Así pues, como esa área no tiene un uso destinado y tampoco prohibiciones a su uso y destino, se debe considerar un elemento común general. Este razonamiento es correcto, toda vez que en la escritura matriz se estableció el área de servicio en el primer piso como un

elemento común general. <u>Apéndice del recurso</u>, págs. 218-129.

Consideramos que el "área de servicio" se podía destinar como recepción para uso de todas las oficinas del edificio. Se trata de una obra de mejora según se define en la ley. Por definición, una obra de mejora es aquella "obra permanente que no sea de mantenimiento, dirigida a aumentar el valor o la productividad de la propiedad en cuestión o a proveer mejores servicios para el disfrute de los apartamientos o de las áreas comunes". Art. 38(d)(3), <u>supra</u>. El cuórum necesario para la aprobación de estas obras de mejora en los condominios exclusivamente comerciales o profesionales se alcanza con las dos terceras partes (2/3) de los titulares, que a su vez reúnan las dos terceras partes (2/3) de las participaciones en los elementos comunes del inmueble, sin que para ello tenga que estar disponible el dinero en el fondo de reserva. Art. 38 (d) (3), <u>supra</u>. Así pues, concluimos que el cambio en el uso y destino del área de servicio a recibidor o salón de espera, fue una obra de mejora alcanzada por el número de titulares que dispone la ley para esos actos. En fin, se trató de una obra que provee mejor servicio para el disfrute de todos los apartamentos.

VI

La sentencia sumaria puede dictarse a favor de la parte reclamante o a favor de la parte contra quien se reclama. Cuando es el reclamante quien presenta la moción

de sentencia sumaria, la Regla 36.1 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, regulaba el mecanismo para la fecha que se resolvió este caso en el Tribunal de Primera Instancia. Por su parte, cuando es la persona contra quien se reclama la que presenta la moción de sentencia sumaria, era la Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la que gobernaba. Hacemos referencia a las Reglas de Procedimiento Civil de 1979 porque eran las vigentes al momento de dictarse sentencia. El análisis es el mismo al amparo de las reglas vigentes de 2009.

Los tribunales podrán dictar sentencia sumaria "inmediatamente si [de] las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente." Regla 36.3 de Procedimiento Civil, supra.

Asimismo, la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que "[p]odrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito". Es decir, se podrá dictar sentencia sumaria parcial interlocutoria de cualquier controversia, siempre

que ella pueda ser separada de las controversias restantes. Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 25 (1986).

La sentencia sumaria es un mecanismo procesal útil "para resolver controversias en donde no se requiere la celebración de un juicio". Ramos Pérez v. Univisión, 178 D.P.R. 200, 213 (2010), citando a Quest Diagnostic v. Mun. San Juan, 175 D.P.R. 994, 1002-1003 (2009).

> La sentencia sumaria tiene como propósito aligerar la tramitación de un caso permitiendo que se dicte sentencia sin necesidad de que se tenga que celebrar la vista en los meritos, cuando de los documentos no controvertidos que se acompañan con la solicitud surge que "no existe disputa de hechos a ser dirimida,… sólo resta aplicar el derecho… y "no se ponen en peligro o se lesionan los intereses de las partes.
>
> Corp.Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).

Esta moción "[p]uede presentarse predicada en la insuficiencia de la demanda, o bien plantear cuestiones estrictamente de derecho que no ameriten declaraciones juradas, tales como cosa juzgada, exoneración, pago, aceptación en finiquito, prescripción, entre otros". J. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo I, Publicaciones J.T.S., San Juan, P.R., 2000, pág. 595. Véase además, Zachry International v. Tribunal Superior, 104 D.P.R. 267, 270-271 (1975); Jablon v. Dean Witter & Co., 614 F.2d 677,682 (1980); Sánchez v. Loffland Bros. Co., 626 F. 2d 1228 (1980); Bader v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 289, 295 (1981).

"[A]l dictar sentencia sumaria el tribunal deberá: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos". Vera v. Dr. Bravo, 161 D.P.R. 308, 333 (2004). Véase, además, López v. Miranda, 166 D.P.R. 546, 562-563 (2005). Ahora bien, una vez el tribunal haya analizado los anteriores criterios, no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede. Íd. págs. 333-334.

"Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". Ramos Pérez v. Univisión, supra, pág. 213 citando a Cuevas Segarra, op cit., T.I, pág. 609. Como vemos, "[l]a controversia sobre el hecho material tiene que ser real". Ramos Pérez v. Univisión, supra, pág. 213. Por ello, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre los hechos relevantes y

pertinentes". Íd. Véase, además, Abrams Rivera v. E.L.A., 178 D.P.R. 924, 932 (2010). "Debe surgir de estos documentos que no existen controversias sobre hechos materiales y esenciales y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria. Vera v. Dr. Bravo, supra, pág. 334.

Asimismo, la persona que se oponga a que se dicte sentencia sumaria "debe proveer evidencia sustancial de los hechos materiales que están en disputa". Ramos Pérez v. Univisión, supra, pág. 215 citando a J. Moore, Moore´s Federal Practice, 3rd ed., Ed Mathew Bender, Sec. 55.11[6][b], pág. 56-145. Es decir, para controvertir una moción de sentencia sumaria "la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". Íd., citando a Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721 (1986).

Según el derecho antes reseñado procedía dictar sentencia sumaria en cuanto a los acuerdos impugnados por la parte peticionaria. Como vimos, no había controversia de hechos, por lo que procedía únicamente aplicar el derecho.

VII

Por los fundamentos antes expuestos se expide el auto de *certiorari* y se revoca la sentencia recurrida. Determinamos que es académico el señalamiento de error acerca del acuerdo para permitir usos profesionales o de

oficina en las unidades uno y dos del piso terrero. Asimismo, dictamos sentencia sumaria para permitir la colocación de máquinas de refrescos y "snacks" en el área comercial uno en el piso terrero; y para los cambios en el uso y destino del área del portero y de la oficina del administrador en el piso terrero a recibidor o salón de espera.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| L. Michael Szendrey y su esposa Maricarmen Ramos de Szendrey y la Sociedad de Bienes Gananciales que existe entre ellos<br><br>Peticionarios<br><br>v.<br><br>Consejo de Titulares del Condominio Metropolitan Professional Park<br><br>Recurridos<br><br>F. Castillo Properties, Inc.; Gam Realty S.C.S.E. y M.P.P. Realty, Inc.<br><br>Interventores-recurridos | CC-2011-0208 |

SENTENCIA

En San Juan, Puerto Rico, a 29 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se expide el auto de *certiorari* y se revoca la sentencia recurrida. Determinamos que es académico el señalamiento de error acerca del acuerdo para permitir usos profesionales o de oficina en las unidades uno y dos del piso terrero. Asimismo, dictamos sentencia sumaria para permitir la colocación de máquinas de refrescos y "snacks" en el área comercial uno en el piso terrero; y para los cambios en el uso y destino del área del portero y de la oficina del administrador en el piso terrero a recibidor o salón de espera.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Jueza Asociada señora Fiol Matta concurre sin opinión escrita. El Juez Presidente señor Hernández Denton no intervino.

Larissa Ortiz Modestti
Secretaria del Tribunal Supremo Interina