| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| PLCA INVESTMENT CORP; y OTROS<br><br>**PEDRO LUIS CORREA AMIL y LISA MARTÍNEZ MANGUAL**<br><br>Recurrentes<br><br>v.<br><br>JUNTA DE DIRECTORES COND. CONDADO LAGOON VILLAS<br><br>Recurrido | KLRA202500328 | *Revisión Judicial* procedente del Departamento de Asuntos al Consumidor<br><br>Caso Núm.:<br>C SAN 2020-007570<br><br>Sobre: Ley de Condominios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de octubre de 2025.

Comparecen ante nos el Sr. Pedro Luis Correa Amil (señor Correa Amil) y la Sra. Liza Martínez Mangual (señora Martínez Mangual), en conjunto los recurrentes. Nos solicitan la revocación de la *Resolución Parcial* emitida el 21 de abril de 2025 por el Departamento de Asuntos del Consumidor (DACo).[1] Mediante el referido dictamen, el DACo desestimó la *Querella* instada por uno de los reclamantes originales, PLCA Investment Corp. (PLCA); y no autorizó que los recurrentes lo sustituyeran.

Por los fundamentos que expondremos, anticipamos la revocación de la decisión administrativa recurrida.

**I.**

Este caso tuvo su génesis el 25 de agosto de 2020, con la presentación de una *Querella* por parte de un grupo de titulares del Condominio Condado Lagoon Villas (Condominio) contra la Junta de Directores del Condominio.[2] Entre los titulares querellantes se encontraba

---

[1] Notificada el 2 de mayo de 2025.
[2] Véase, Apéndice de los recurrentes, págs. 8-12.

Número Identificador

SEN2025_____

la corporación PLCA, debidamente creada bajo las leyes del Estado Libre Asociado de Puerto Rico. Cabe señalar que el señor Correa Amil era el presidente y único accionista del ente corporativo. En esencia, los titulares alegaron que durante una reunión del Consejo de Titulares del Condominio se autorizó el uso indebido de elementos comunes. Entre estos, uso indebido de servicio de agua, electricidad y el cierre de pasillos para el uso exclusivo de ciertos apartamentos. El 28 de septiembre de 2020, los titulares presentaron una *Querella Enmendada.*[3]

Tras varios trámites procesales, la Junta de Directores del Condominio contestó la *Querella* el 16 de septiembre de 2021.[4] En síntesis, la parte querellada negó las alegaciones en su contra y levantó varias defensas afirmativas. Posteriormente, el 29 de septiembre de 2021, los titulares querellantes presentaron una *Solicitud de resolución sumaria conforme a la Regla 11.*[5] Por su parte, la Junta de Directores del Condominio presentó su escrito en oposición el 3 de noviembre de 2021.[6] Alegó que los titulares carecían de legitimación activa para impugnar tanto las acciones del Consejo de Titulares como las acciones de la Junta de Directores del Condominio; y que por ello debía desestimarse la reclamación administrativa en su contra. Particularmente, arguyó que PLCA estaba impedido de impugnar los acuerdos alcanzados durante las asambleas ya que no se acreditó mediante resolución corporativa la capacidad representativa del señor Correa Amil. El 23 de mayo de 2022, el DACo emitió una *Notificación y Orden.* En esta, el DACo expresó que existían controversias sustanciales de hechos que ameritaba la celebración de una vista administrativa. De igual forma, declaró No Ha Lugar la solicitud desestimatoria presentada por la Junta de Directores del Condominio.

---

[3] Véase, Apéndice de los recurrentes, págs. 19-26.
[4] Véase, Apéndice de los recurrentes, págs. 103-107.
[5] Véase, Apéndice de los recurrentes, págs. 108-126.
[6] Véase, Apéndice de los recurrentes, págs. 195-205.

El 2 de junio de 2022, la Junta de Directores del Condominio presentó una *Moción de desestimación.*[7] Adujo que, en esa misma fecha, advino en conocimiento que PLCA vendió su propiedad en el Condominio al señor Correa Amil y a la señora Martínez Mangual. Por consiguiente, la Junta de Directores arguyó que PLCA ya no era titular del Condominio y carecía de legitimación activa para litigar la controversia de epígrafe por haberse tornado académica. Por ello, le solicitó al DACo que desestimara con perjuicio la *Querella* en cuanto a PLCA.

El 9 de junio de 2022, PLCA compareció mediante escrito en oposición.[8] En resumen, indicó que el señor Correa Amil es el presidente de PLCA y fue él quien votó en contra de las medidas impugnadas en la *Querella.* Además, adujo que el Reglamento de Procedimientos Adjudicativos dispone para la sustitución de las partes. A esos efectos, PLCA solicitó al DACo que lo sustituyera en la *Querella* por el señor Correa Amil y la señora Martínez Mangual.

El 23 de junio de 2022, la Junta de Directores compareció mediante *Moción en solicitud de remedio adecuado.*[9] En primer lugar, señaló que el DACo no se había expresado en torno a su solicitud de desestimación en relación a PLCA. Por otro lado, se opuso a la sustitución de partes propuesta por el querellante. Expresó que, cuando los recurrentes compraron el apartamento situado en el Condominio, aceptaron la propiedad y las condiciones manifiestas de los elementos comunes en la forma y manera en que se encontraban al momento de adquirir la propiedad. Por lo tanto, la Junta de Directores del Condominio sostuvo que los recurrentes estaban imposibilitados de perseguir la reclamación, toda vez que estos aceptaron la propiedad tal y como estaba al momento de la compraventa.

---

[7] Véase, Apéndice de los recurrentes, págs. 219-222.
[8] Véase, Apéndice de los recurrentes, págs. 223-224.
[9] Véase, Apéndice de los recurrentes, págs. 225-230.

Así las cosas, el 21 de abril de 2025, el DACo emitió una *Resolución Parcial* en la cual realizó las siguientes determinaciones de hechos:

1. La parte querellante PLCA Investment Corp. era titular del apartamento 7211-7212 y apartamento 65 mediante Escritura de Compraventa otorgada el 30 de abril de 2018 ante la notario Alexandra Serracante Cadilla.

2. El 30 de mayo de 2022 vendió su apartamento a Pedro Luis Correa y su esposa Lisa Mart[í]nez Mangual mediante escritura de Compraventa otorgada ante el notario Eufemio Martínez Cintrón.

3. El nuevo adquiriente era el presidente de la corporación querellante, PLCA Investment Corp.

4. Luego de la venta del apartamento, la parte solicitó que se les permitiese substituir a los nuevos titulares por la corporación querellante.

5. La parte querellada se opuso a la sustitución de parte, alegando que era improcedente toda vez que las personas naturales Pedro Correa y Lisa Mart[í]nez no tenían legitimación activa ya que no eran titulares al momento de los hechos en el caso de autos.

6. Los actuales titulares de los apartamentos 7211-7212 y 65 no pertenecían al Consejo de Titulares previo al 30 de mayo de 2022, por lo que no tienen legitimación activa para comparecer ante este foro.

7. Aun cuando el Sr. Pedro Correa Villamil era el presidente de la corporación que era titular, PLCA Investment Corp., se trata de dos personas diferentes cuyas identidades no pueden confundirse.

Al tenor de lo anterior, el DACo desestimó la *Querella* en cuanto a PLCA y no permitió la sustitución de parte por los nuevos adquirientes, el señor Correa Amil y la señora Martínez Mangual. El DACo razonó que, conforme al derecho vigente, los recurrentes aceptaron las condiciones de los elementos comunes tal y cómo se encontraban físicamente al momento de la compraventa. Por ello, el DACo determinó que no les era posible llevar una acción con el fin de devolver los elementos comunes a su estado original o para oponerse a cambios previamente aprobados por el Consejo de Titulares del Condominio. Así, pues, el DACo ordenó la continuación de los procedimientos con los restantes querellantes.

Inconformes, los recurrentes acudieron ante este foro apelativo intermedio y señalaron la comisión del siguiente error:

ERR[Ó] LA JUEZ ADMINSITRATIVA AL RESOLVER QUE PEDRO LUIS CORREA AMIL Y LISA MART[Í]NEZ MANGUAL EST[Á]N IMPEDIDOS PARA SUSTITUIR A LA CORPORACI[Ó]N PLCA INVESTMENT LA CUAL EL [Ú]LTIMO ERA PRESIDENTE Y ACCIONISTA; AL ADQUIRIR LA TITULARIDAD DEL INMUEBLE UBICADO EN CONDADO LAGOON VILLAS Y EL CUAL ES EL MOTIVO DE LA LEGITIMACI[Ó]N ACTIVA PARA COMPARECER.

En cumplimiento con nuestra *Resolución* de 4 de junio de 2025, la Junta de Directores del Condominio compareció mediante escrito *Oposición a revisión judicial.* Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia ante nuestra consideración.

## II.

## A.

Revisamos la *Resolución Parcial* del DACo, al palio del Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.* (Ley Núm. 201-2003), el cual dispone en lo atinente que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u. Por igual, el Artículo 4.006 de la Ley Núm. 201-2003 provee para la revisión judicial "de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". 4 LPRA sec. 24y.

En consonancia, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.*, establece un procedimiento uniforme de revisión judicial a la acción tomada por una agencia de Gobierno al adjudicar un caso. En particular, la Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, estatuye que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina

que a éste le asiste el derecho. De esta manera, mediante nuestra revisión judicial, debemos intervenir con la decisión administrativa si no está basada en evidencia sustancial; el ente gubernamental erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional; o la actuación administrativa lesionó derechos de entronque constitucional. *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012).

Por consiguiente, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales debemos ejercer un juicio independiente al decidir si una agencia actuó o no dentro del marco de sus facultades estatutarias. Véase, *Loper Bright Enterprises v. Raimondo,* 144 S.Ct. 2244 (2024); 603 US __ (2024); *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025). Claro está, según ha pautado el Tribunal Supremo federal y ha refrendado nuestro alto foro, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los foros revisores y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Id.,* pág. 2259; *Vázquez v. Consejo de Titulares, supra.* Ahora, el peso persuasivo de la determinación administrativa va a depender de la minuciosidad en su consideración, de la validez de su razonamiento, así como de su congruencia con pronunciamientos anteriores y posteriores. Véase, *Skidmore v. Swift & Co.,* 323 US 134, 139-140 (1944), citado con aprobación en *Loper Bright Enterprises v. Raimondo, supra,* pág. 2259.

**B.**

La Ley Núm. 129 de 16 de agosto de 2020, *Ley de Condominios de Puerto Rico,* 31 LPRA sec. 1921a *et seq.,* en su Artículo 3, define al Consejo

de Titulares como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares". 31 LPRA sec. 1921(h). El Consejo de Titulares tiene personalidad jurídica propia y de sus obligaciones frente a terceros, responden los titulares de forma subsidiaria y sólo con su apartamento. 31 LPRA sec. 1922t.

Según el Artículo 49 de la Ley de Condominios, corresponde al Consejo de Titulares elegir, por el voto afirmativo de la mayoría, las personas que habrán de ocupar los cargos de la Junta de Directores. 31 LPRA sec. 1922u (a) (1). También le corresponde al Consejo de Titulares "[i]ntervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aquellas medidas necesarias y convenientes para el mejor servicio común". 31 LPRA sec. 1922u (j).

En cuanto al grado de responsabilidad de los directores que componen la Junta de Directores dicho artículo establece que "[l]os directores responderán personalmente por sus acciones mientras actúen como tales, sólo cuando incurran en delito, fraude o negligencia crasa, siendo el Consejo de Titulares quien posee la causa de acción para reclamar la violación fiduciaria. En cualquier otro caso en que se le imponga responsabilidad pecuniaria a un titular por sus gestiones como director, el Consejo de Titulares cubrirá dichos gastos". 31 LPRA sec. 1922u (a) (1).

Por su parte, la Junta de Directores se refiere al "[d]irector o grupo de Directores electos por el Consejo de Titulares". 31 LPRA sec. 1921b (p). En general, dicho cuerpo directivo tiene el deber de "[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a esos efectos las oportunas advertencias y apercibimientos a los titulares". 31 LPRA sec. 1922y (a). De otro lado, la Ley de Condominios indica que el adquirente voluntario es aquella "[p]ersona que, luego de ejercer su criterio en el curso

usual de los negocios, deliberadamente adquiere el bien inmueble porque le resulta un buen negocio". 31 LPRA sec. 1921b (c).

En lo que concierne a las reglas que gobiernan el uso de los apartamentos, el Artículo 39 de la Ley de Condominios indica en su acápite (10) que "[e]l adquirente de un apartamento, **acepta la condición manifiesta de los elementos comunes del condominio en la forma en que éstos se encuentren físicamente al momento de adquirir. A este adquirente se le atribuirá el conocimiento de los cambios manifiestos que existan en el inmueble para todos los efectos de la tercería registral**". (Énfasis nuestro). 31 LPRA sec. 1922k (10).

Por otra parte, el Artículo 65 preceptúa lo siguiente con respecto a las impugnaciones de las acciones u omisiones de la Junta de Directores, Administrador Interino, y acuerdos y determinaciones del Consejo:

> Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos:
>
> a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>
> b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.
>
> Los titulares que sean dueños de apartamentos en condominios que sean dedicados exclusivamente a uso comercial, tendrán que presentar la impugnación ante el Tribunal de Primera Instancia, el cual tendrá jurisdicción primaria y exclusiva. En el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador.
>
> Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años. El término se computará a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia. El acuerdo tiene que haberse notificado conforme a las disposiciones de esta Ley.

El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene. En el caso de la impugnación de acuerdos del Consejo de Titulares tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada.

El foro con jurisdicción en el que se diluciden las querellas o acciones de impugnación, le impondrá a la parte que hubiese procedido con temeridad el pago de costas y honorarios de abogados.

El titular que prevalezca en cualquier reclamación de su querella no tendrá que contribuir a los honorarios o gastos legales en que incurra la Junta o el Consejo de Titulares, ni a la multa que, en su caso, pudiera imponérsele a la parte querellada. 31 LPRA sec. 1923j.

**C.**

En lo pertinente, es meritorio mencionar que el Reglamento de Procedimientos Adjudicativos, Reglamento 8034, 13 de junio de 2011 (Reglamento 8034) adoptado por el DACo acoge en su Regla 19 un mecanismo de sustitución de partes y solicitud de intervención, después de presentada una querella. Así reza en lo que nos concierne:

**Regla 19 - Sustitución de Partes y Solicitud de Intervención**

**19.1.** Se podrá sustituir las partes en cualquier momento después de radicada la querella de acuerdo a las normas provistas por las Reglas de Procedimiento Civil de Puerto Rico de 2009, según enmendadas.

La Regla 22.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 22.3, regula la sustitución de parte por cesión de interés. La norma procesal dispone en lo pertinente que, "[e]n caso de cualquier cesión de interés, podrá continuarse el pleito por o contra la parte original a menos que el tribunal, previa solicitud al efecto, disponga que el cesionario o la cesionaria sea sustituido o sustituida en el pleito o acumulado o acumulada a la parte original".

Mediante la sustitución, una parte en un pleito es sustituida por otra que ocupa su posición. De ordinario, cuando ocurre una cesión de un bien, la sustitución es optativa o discrecional, no compulsoria. Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, *Informe de las Reglas de Procedimiento Civil*, marzo 2008, pág. 257, que cita a *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 759, (2003). La solicitud deberá ser notificada conforme se dispone en la Regla 22.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 22.1.

Como se sabe, excepto que se pacte cosa distinta, el principio de transmisibilidad de todos los derechos adquiridos únicamente está vedado cuando hay un pacto de incedibilidad, una prohibición legal, o el crédito o derecho es de naturaleza personalísima. Véase, J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., San Juan, Publicaciones JTS, 2011, T. II, pág. 827; Arts. 359, 975 y 1065 del Cód. Civil, 31 LPRA secs. 6361, 8585 y 8986; *Consejo de Titulares v. C.R.U.V.*, 132 DPR 707, 718 (1993). Ello así, porque "el trámite procesal de sustitución en nada afecta los derechos sustantivos de las partes". *Mun. de San Juan v. Bosque Real*, S.E., *supra*, que cita a *Pereira v. I.B.E.C.*, 95 DPR 28, 66 (1967). Por ello, en los casos de sustitución por cesión de interés, debido a que se puede continuar el litigio por o contra la parte original —o sea, el cedente— la cesión no requiere la terminación de la acción.

**III.**

En el presente caso, los recurrentes acuden ante esta Curia y nos solicitan que revoquemos una *Resolución Parcial* emitida por el DACo. En

esta, el DACo no permitió que los recurrentes sustituyeran a una de las partes en el pleito por entender que estos aceptaron las condiciones de los elementos comunes tal y como se encontraban físicamente al momento de la compraventa.

Los recurrentes plantean que el Artículo 65 de la Ley de Condominios, el cual fue utilizado como fundamento por el DACo en el dictamen recurrido, no prohíbe la sustitución de una parte. Arguyen, además, que en ausencia de pacto distinto, todos los derechos son transmisibles con sujeción a las leyes. Art. 1065 del Código Civil, 31 LPRA sec. 8986. Sostienen de igual manera que lo resuelto por este Tribunal en el caso *Fred I Fletcher v. Junta de Directores*, KLRA200900762, favorece su postura, toda vez que confirma el razonamiento de que el nuevo titular puede sustituir al anterior en un caso que ya comenzó.

Por otro lado, la parte recurrida aduce, en resumen, que los recurrentes no tienen legitimación activa en virtud de los Artículos 65 y 39 (10) de la Ley de Condominios. Asimismo, asevera que los supuestos que contemplan la sustitución de parte en el Reglamento 8034 y en las Reglas de Procedimiento Civil no están presentes en el caso ante nuestra consideración. Expresan que el caso *Fred I Fletcher v. Junta de Directores, supra,* no favorece la postura de los recurrentes, pues:

> [e]l mencionado caso reafirma que una vez los titulares de un apartamento venden el inmueble, y con ello conceden la titularidad, 'carecen de legitimación activa para continuar con la causa de acción', y que la legitimación para impugnar actos de la Junta de Directores o del Consejo de Titulares no se transfiere automáticamente a terceros que no eran titulares al momento de los hechos.[10]

De acuerdo con el Derecho esbozado, somos del criterio que el DACo cometió el error señalado. No surge del Artículo 65 de la Ley de Condominios que se prohíba de manera expresa la sustitución de una parte. Además, el precitado Reglamento 8034 contempla las sustituciones de partes luego de presentada una querella en la aludida agencia. En este

---

[10] Véase, Oposición del recurrido, pág. 7.

caso, nos encontramos ante una situación en la que se ha cedido un interés o un bien. Como señaláramos, cuando se trata de una sustitución por cesión de interés, como el litigio puede continuar por o contra la parte original, la cesión no implica el fin de la acción. Cabe destacar que, aunque la determinación administrativa impugnada no da por culminada todas las controversias ante el foro administrativo, intervenimos en ella toda vez que lo pronunciado por el DACo tiene efectos adjudicativos y finales para la parte afectada y recurrente, el señor Correa Amil y la señora Martínez Mangual. Véase, *Simpson, Passalacqua v. Quirós, Betances*, 2024 TSPR 64, 214 DPR __ (2024). Es por eso que, si bien es cierto que en estas instancias la sustitución de parte es discrecional, colegimos que en el caso de epígrafe procede la sustitución de la parte recurrente.

Por lo tanto, luego de un análisis exhaustivo del expediente ante nos, concluimos que el Departamento de Asuntos al Consumidor incidió en la interpretación y aplicación del Derecho en cuestión.

**IV.**

Por los fundamentos antes expuestos, revocamos la *Resolución Parcial* recurrida. En consecuencia, devolvemos el caso ante la consideración del Departamento de Asuntos de Consumidor a los fines de que se permita la sustitución de parte.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones